UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDDIE SPILLER #227632,

          Plaintiff,                              Hon. Janet T. Neff

v.                                       Case No. 1:18-cv-692

JEFFREY STIEVE, et al.,

          Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 16), and <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 29). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). In May 2010, Plaintiff injured his shoulder "while exercising in an MDOC facility." Despite repeatedly requesting medical care, over the course of the next three years, Plaintiff received minimal treatment consisting of nothing more than Tylenol and a hot water bottle. In August 2013, and again in March 2014, Plaintiff received steroid injections in his shoulder. In February 2015, Plaintiff was examined by a doctor who concluded that Plaintiff's shoulder "required surgical intervention." This conclusion was confirmed by a second examination performed in May 2015. Plaintiff believed that he would be

-1-

scheduled for surgery, but was informed in February 2016, that his request for shoulder surgery had been denied in July 2015 by Dr. Keith Papendick.

Plaintiff initiated this action on June 22, 2018, against: (1); Dr. Jeffrey Stieve; (2) Dr. William Borgerding; (3) Corizon Health, Inc.; (4) Dr. Keith Papendick; (5) Dr. Jeffrey Bomber; and (6) Dr. Robert Lacy.   Plaintiff alleges that the individual defendants denied him medical treatment in violation of his Eighth Amendment rights.   Plaintiff alleges that Corizon violated his constitutional rights by acting pursuant to a policy of deliberate indifference.   Defendants now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.   The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v.*

-2-

*Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of

different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support

Administration."   Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.   If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance.   *Id.*   The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   *Id.* at ¶ BB.   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   *Id.* at ¶ FF.   The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.   *Id.*

In support of their motion, Defendants have identified a single grievance which Plaintiff pursued regarding the matters giving rise to this action.   On February 19, 2016, Plaintiff initiated Grievance KCF-16-02-2267-12d alleging that Defendant Papendick improperly denied his request for shoulder surgery.   (ECF No. 17-3 at PageID.101).   Plaintiff's grievance was denied on the merits at steps I and II.   (ECF No. 17-3 at PageID.98-100).   Plaintiff pursued his grievance to step III, however, his grievance appeal was filed several weeks late and was, therefore, rejected as untimely.   (ECF No. 17-3 at PageID.97).   Plaintiff does not dispute that this grievance was properly rejected as untimely filed.   (ECF No. 20 at PageID.136).   Plaintiff has failed to identify any other grievance regarding these events which he properly pursued through all three steps of the prison

-5-

grievance process.   Accordingly, the Court finds that Plaintiff has failed to properly exhaust his administrative remedies as to the claims asserted in this matter.

To avoid this result, Plaintiff argues that the grievance he filed should be deemed to exhaust not only the claims referenced in the grievance, but all subsequent events related to his denial of medical treatment.   This argument is premised on the notion that where a prisoner is experiencing an "ongoing condition" and files a grievance "that identifies the persistent failure to address that condition," that grievance properly exhausts all claims regarding the failure to obtain treatment "as long as the prison officials retain the power to do something about it."   *Ellis v. Vadlamudi*, 568 F.Supp.2d 778, 783-84 (E.D. Mich. 2008).   While this "ongoing condition" theory strikes the Court as eminently reasonable, it is premised on the initial grievance, which puts prison officials on notice, being properly pursued through all three steps of the grievance process.   Plaintiff has identified no authority standing for the proposition that a grievance, properly rejected as untimely, can nevertheless exhaust the claims therein let alone any future claims arising from the alleged lack of medical care. The Court, therefore, rejects this argument.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 16), be **granted**; <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 29), be **granted**; and this matter **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).

-6-

Failure to file objections within the specified time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: May 13, 2019                    /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       U.S. Magistrate Judge

-7-